UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EMMANUEL A. WINTERS,

    Plaintiff,

        v.                       CAUSE NO. 3:23CV989-PPS/JPK

JACK HENDRIX, et al.,

    Defendants.

OPINION AND ORDER

Emmanuel A. Winters, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983.[1] (ECF 1.) Under 28 U.S.C. § 1915A, I must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Winters is

---

[1] The complaint is not on the court's approved form for prisoner civil rights actions. N.D. IND. L.R. 7-6 (requiring litigants without counsel to use clerk-supplied forms when available). Even though he is proceeding without counsel, he is expected to comply with applicable procedural rules. *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("As we have repeatedly held, even pro se litigants must follow procedural rules[.]"). In this instance, I will overlook the deficiency because he claims to have pressing concerns. However, he must comply with this requirement if he files a complaint in the future.

proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Winters has been in long-term segregation at the Westville Control Unit ("WCU") since December 2022 after incurring more than 100 disciplinary infractions. (ECF 1-1 at 4.) He raises sprawling allegations against 25 defendants pertaining to his placement in the segregation unit and the conditions there. He sues the Indiana Governor, various high-ranking officials within the Indiana Department of Correction, the Warden of Westville Correctional Facility, medical staff, and others. He seeks compensatory and punitive damages as well as injunctive relief.

As to the conditions, he claims that the drinking water in his cell is dirty and "brown," which causes him stomach pain when he drinks it. The food is cold, breakfast is "always the same," and the food often contains foreign objects, such as hair, bugs, and mice feces. He once accidentally ate a piece of mouse feces and became ill. There is a "count light" on 24 hours a day, which "frustrates" him and impacts his ability to sleep. Several of the inmates housed nearby have psychological problems and often have loud outbursts, which "stresses [him] out." Whenever he leaves his cell he is shackled, including during video visits with his family. He can only shower three times a week and states that the law library is "inadequate." He additionally claims that the harsh conditions in the segregation unit are causing his mental state to deteriorate. He claims to be in a "deep depression" which has caused him to lose 25 pounds, feel that the "walls are closing in," and have thoughts of suicide.

He further claims that he has not been given proper periodic reviews of his placement in long-term segregation. He states that the staff members who have reviewed his placement "have not ever met with [him]," and he believes the process is "perfunctory." He also claims that staff has relied on "inaccurate or unreliable" psychological evaluations conducted by medical staff in deciding whether to release him from segregation.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farnham*, 394 F.3d at 478. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

"The Constitution mandates that prison officials provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citation and internal quotation marks omitted); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Inmates are also entitled to adequate drinking water. *Thomas*, 2 F.4th at 719. Mr. Winters claims that he is often served food with foreign objects, including animal feces, and that he has to choose between eating the food or going hungry. He claims to have lost 25 pounds during the past 11 months. Likewise, he claims that his only drinking water is dirty and brown, and that drinking it causes him stomach problems. Giving him the inferences to which he is entitled at this stage, he has satisfied the objective prong with respect to his food and water.

However, on the subjective prong, he has not alleged factual content from which I could plausibly infer that any of the named defendants had specific knowledge of these conditions and deliberately turned a blind eye to them, which is necessary to hold them liable for damages. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Nevertheless, his complaint can be read to allege that he has an ongoing need for adequate food and water that is not being met. Warden John Galipeau has both the authority and the responsibility to ensure that inmates at his facility are provided adequate food and water as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). He will be allowed to proceed on an Eighth Amendment claim against the Warden in his official

4

capacity for injunctive relief to address his need for clean drinking water and food that does not contain foreign objects.

To the extent he is asserting a claim about the showers he receives, an opportunity to shower three times a week is sufficient under the Constitution. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("limiting inmates to weekly showers does not violate the Eighth Amendment"). Likewise, his allegation that the law library is generally inadequate does not state a claim for denial of access to the courts, because he does not allege prejudice to a non-frivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Nor can I conclude that the presence of a light permitting guards to count inmates or occasional noise from other inmates are the types of extreme deprivations that would support an Eighth Amendment claim. *Pegues v. Rogers*, No. 3:07-CV-93-PPS, 2007 WL 951896, at *1 (N.D. Ind. Mar. 27, 2007) (observing that "conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations"). He will not be permitted to proceed on a claim regarding these conditions.

He further claims that he is having psychological problems and thoughts of suicide. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that

5

is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted). Mere disagreement between the prisoner and medical staff, or even between two medical professionals, is generally not enough to establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019)

Giving Mr. Winters the inferences to which he is entitled, he has alleged a serious medical need in connection with his mental health problems. On the second prong, although he names multiple health care providers as defendants, he does not link up any alleged wrongdoing to any specific individual. I cannot plausibly infer from his allegations that a member of the medical staff has deliberately turned a blind eye to his health concerns. Documents he attaches to the complaint reflect that he has been seen multiple times by mental health staff during his detention in the segregation unit, most recently in October 2023, and has been given self-help materials to help him deal with the stress he is experiencing. (ECF 1-1 at 18-39.) He was also referred to the prison

6

chaplain for support after reporting emotional problems caused by the death of his uncle. (*Id.* at 34.) He has not stated a plausible claim for damages against any individual staff member.

Nevertheless, his complaint can be read to allege that he has ongoing mental health problems that are not being adequately treated and are resulting in him having thoughts of suicide. The Warden has both the authority and the responsibility to ensure that inmates at his facility are provided adequate medical care as required by the Eighth Amendment. *See Gonzalez*, 663 F.3d at 315. He will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for mental health treatment.

It can be discerned that Mr. Winters also challenges his detention in the long-term segregation unit. In his view, he has served all the time in segregation associated with his disciplinary infractions and therefore has no business being maintained there. However, the Constitution doesn't create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate is entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation even when they are subjected to harsher conditions as a result. *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). Placement in long-term segregation approaching a year or more can implicate a

liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009).

Mr. Winters has been in long-term segregation almost a year, and the conditions he describes sound harsh and unpleasant. However, I cannot conclude that the conditions he describes so "greatly exceed what a prison inmate could expect from confinement generally" as to trigger a due process liberty interest. *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997). Even if I were to presume that he has a protected liberty interest, inmates are only entitled to "some informal, nonadverserial" procedures in this context. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement and an opportunity to present his views. *Id.*

The initial placement review need only take place "within a reasonable time" and the inmate is not entitled to a hearing, to call witnesses, or to require prison officials to interview witnesses. *Id.* He is also not entitled to a written decision describing the reasons for his placement or to a formal appeal procedure. *Id.* at 686. He is entitled to periodic review of his placement, but this process may also be informal and non-adversarial. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686. In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

The complaint does not plausibly allege that Mr. Winters has been denied minimal due process protections. He attaches records reflecting that different staff members have conducted a total of 16 periodic reviews of his placement during the past 11 months. (ECF 1-1 at 1-17.) They have concluded that his continued placement in segregation is warranted based on a variety of factors, including his extensive disciplinary record. He suggests the process is a "sham" because prison staff are relying on "inaccurate" psychological evaluations in making these determinations. (ECF 1 at 8.) However, he does not provide any detail, such as when the psychological evaluations were done, what they concluded, or why they are inaccurate. Merely "putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). To the extent he is claiming a lack of compliance with state law, this cannot form the basis for a claim under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). He has not alleged a plausible due process claim.

He also appears to be asserting claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), against various state officials. These claims are unavailing, because *Monell* only applies to municipal actors, not state officials.[2] *See Will*

---

[2] A state official can be named in an official capacity for prospective injunctive relief for an ongoing constitutional violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997).

*v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *see also Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state.").

He also alleges a *Monell* claim against Centurion Health of Indiana ("Centurion"), the private company that staffs the medical department at the prison. A private company performing a public function can be held liable under *Monell*, but only if the unconstitutional acts of their employees "were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, the plaintiff must identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

In connection with this claim, Mr. Winters alleges in general terms that Centurion has "policies, practices and/or procedures of condoning its employees inaccurate or unreliable psychological evaluations" without providing any factual content to back it up. (*See* ECF 1 at 7.) He does not clearly allege how this official policy or practice caused him injury, and as stated above, he does not provide any information

---

I am already permitting him to proceed against the Warden on claims for injunctive relief related to alleged ongoing constitutional violations.

about these alleged unreliable psychological evaluations. Nor does he describe conduct in the vein of a widespread practice, rather than isolated incidents of misconduct by the medical staff who evaluated him.[3] *Howell*, 987 F.3d at 654; *Miranda*, 900 F.3d at 353-54. This corporate defendant will be dismissed.

He separately moves for a preliminary injunction, stating, "I am suffering irreparable harm in the form of continued physical and mental pain and suffering an increased risk of suicide." (ECF 3.) I understand his motion to be requesting that he be released from the segregation unit and/or that other relief be provided to remedy the conditions he describes while this case is pending.[4]

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong,

---

[3] He also makes broad allegations about a vast conspiracy between the Governor, high-ranking IDOC officials, and others to violate his rights, but such vague allegations do not state a plausible claim. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). He additionally alleges "disability discrimination" in the section designated "Jurisdiction and Venue," without mentioning this claim in the narrative section or providing any factual content to suggest he has been subjected to discrimination based on a disability. (*See* ECF 1 at 3.) He has not stated a claim on these grounds.

[4] He requests broad relief to prevent staff from "retaliat[ing]" against him in any way (ECF 3 at 1), but there are no allegations about unlawful retaliation in the complaint, nor is he being granted leave to proceed on a retaliation claim. He cannot obtain injunctive relief on issues that fall outside the scope of this lawsuit. *See Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022); *Westefer*, 682 F.3d at 681.

"the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, I do not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, I must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Furthermore, mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one Mr. Winters seeks—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, my ability to grant injunctive relief is significantly limited. Any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer*, 682 F.3d at 681 (citations and internal quotation marks omitted). I also must consider that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies

and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Likewise, Mr. Winters does not have a constitutional right to the housing assignment of his choosing, and where best to house a prisoner is ordinarily a matter firmly committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

At present, I only have Mr. Winters' version of events, and it is difficult for me to make an accurate assessment of whether he has a likelihood of success on his claim that he is receiving constitutionally inadequate food, water, and medical care. In light of the deference owed to prison officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, I will order the Warden to respond before taking further action on his request.

ACCORDINGLY, the court:

(1) GRANTS the plaintiff leave to proceed against the Warden of Westville Correctional Facility in his official capacity for injunctive relief to address his need for adequate drinking water, food, and mental health care as required by the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Jack Hendrix, Eric J. Holcomb, Robert Carter, Deanna Dwenger, Watts, Gann, Farley, Gary Lewis, Tracy Cornett, Gulleson, Thomas, Doughtery, Hines, Carroll, Watts, Williams, Michelle Borne, Wala, Nikki Tafoya, Centurion Health of Indiana, Rojo, Crittitan, and Christina Reagle as defendants;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Westville Correctional Facility by email to the Indiana Department of Correction with a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at Westville Correctional Facility;

(6) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(7) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **December 11, 2023**, with supporting documentation and declarations from staff as necessary, addressing the plaintiff's current need for clean drinking water, food that does not contain foreign objects, and mental health treatment to address thoughts of suicide; and

(8) ORDERS the Warden to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 13, 2023.

    /s/ Philip P. Simon  
    JUDGE  
    UNITED STATES DISTRICT COURT