UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EMMANUEL A. WINTERS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23CV989-PPS/JPK |
| WARDEN, | |
| Defendant. | |

OPINION AND ORDER

Emmanuel A. Winters, a prisoner without a lawyer, moves for a preliminary injunction requiring that he be transferred out of the Westville Control Unit ("WCU") while this case is pending. (ECF 3.) I ordered a response to the motion, which has now been received. (ECF 15.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, I do not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v.*

*Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, I must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one Mr. Winters seeks—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, my ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting). Additionally, I must bear in mind that Mr. Winters does not have a constitutional right to the housing assignment of his choice, and where best to house a prisoner is ordinarily a matter that is firmly committed to the discretion of prison officials. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996).

As outlined in the screening order, Mr. Winters claims that he is being denied adequate food and water in WCU because he is served food with foreign objects, including animal feces, and his only drinking water is dirty and brown. He also claims that he has been denied proper medical care for depression and suicidal ideations, and that he needs to be released from WCU because of these issues. (ECF 3, 5.)

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). To establish an Eighth Amendment violation, an inmate must satisfy both an objective and subjective prong. *Id.* The objective prong asks whether the alleged deprivation or condition of

confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. "The Constitution mandates that prison officials provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citation and internal quotation marks omitted); *see also Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Inmates are also entitled to adequate drinking water. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021).

On the subjective prong, the prisoner must prove that the defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farnham*, 394 F.3d at 478. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must prove "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

Inmates are also entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove an Eighth Amendment violation, a prisoner must demonstrate (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. This includes appropriate measures to address the risk of

self-harm from suicide. *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021). Negligence or medical malpractice does not establish an Eighth Amendment violation. *Walker*, 940 F.3d at 965. Instead, courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Id.* ( citation and internal quotation marks omitted).

The Warden argues that preliminary injunctive relief is not warranted in this case and has submitted Mr. Winters' extensive medical and grievance records with his response.[1] (ECF 15; ECF 15-1 to 15-30.) Those records reflect that Mr. Winters has a current mental health code of "F," meaning that he has a history of substance abuse but, according to mental health providers who have evaluated him, is free of impairments related to his mental health. (ECF 15-11.) He underwent a mental health evaluation when he first arrived at WCU in December 2022, and he received additional visits and assessments by mental health staff on January 3, 2023; January 11, 2023; January 13, 2023; February 8, 2023; February 28, 2023; March 8, 2023; March 28, 2023; April 12, 2023; May 9, 2023; May 30, 2023; June 14, 2023; June 20, 2023; July 6, 2023; July 12, 2023; July 25, 2023; August 31, 2023; September 13, 2023; and October 30, 2023. (ECF 15-2 to ECF 15-22.) The medical professionals who have evaluated him are of the view that he does not exhibit significant depressive symptoms, has positive coping skills and a good family support network, and poses a low risk of suicide. (ECF 15-3 at 1; ECF 15-8 at 1; ECF 15-9 at 1; ECF 15-13 at 1; ECF 15-21 at 1.) Although he has identified situational stressors and voiced concerns about suicide as far back as December 2022, in their view he does not "endorse or exhibit any hopelessness or helplessness" and is "future oriented," as he "talks about his goals for release of . . . having his own businesses." (ECF 15-3 at 1; ECF 15-21 at 1.) One provider noted that he voices "many complaints"

---

[1] The Warden has submitted relevant portions from Mr. Winters' medical file, which is over 1,000 pages long and details medical treatment for a variety of problems unrelated to his current claims. (ECF 15-1 ¶ 5.) The records reflect that he has received treatment for asthma, knee pain, dermatitis, and other conditions.

but has "no genuine MH [mental health] concerns."[2] (ECF 15-5 at 1.) In an assessment conducted on October 30, 2023, two days before he filed the complaint, the provider noted that his psychiatric functioning was "normal," he was "oriented to time, place, person & situation," had "[a]ppropriate mood and affect," "[n]ormal insight," and "[n]ormal judgment." (ECF 15-23 at 2.) She also conducted a full suicide risk assessment and concluded that he posed a low risk of suicide. (*Id.* at 3.)

The medical records before me reflect that mental health staff have diligently responded to Mr. Winters' requests for care and have taken his mental health needs seriously. Based on multiple assessments, their professional view is that he is not suffering from depression, is not in need of medication, and is not suicidal. Although he disagrees with their assessment, that is not enough to establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 .3d 1016, 1024 (7th Cir. 2019). He has not demonstrated a likelihood of success on his claim that mental health staff have been deliberately indifferent to a serious medical need, nor has he demonstrated that he will suffer irreparable injury if he is not granted an immediate transfer out of WCU or other injunctive relief while this case is pending.

As for the food and water claim, the Warden attests that Mr. Winters is provided with clean drinking water and uncontaminated food in WCU. (ECF 15-30 ¶ 4-5.) He also points to records reflecting that Mr. Winters has engaged in various "hunger strikes" and "water strikes" while in WCU. One medical record notes that that he embarked on a hunger strike in early January 2023 "because he cannot get his tablet after being here a month." (ECF 15-4 at 1.) In early August 2023, he was seen by a nurse because he reported being on a hunger strike and not eating or drinking any water for 24-48 hours; he was educated about the consequences of his actions, and in the presence of the nurse he drank 16 oz. of water and ate an apple. (ECF 15-17 at 1-3.) Later that day, he was seen

---

[2] Some of the medical records reflect that Mr. Winters has not always cooperated with providers. It was noted that one visit was cut short after Mr. Winters began to masturbate in front of the female mental health provider. (ECF 15-7 at 1.) At a subsequent visit, the provider reported that he talked about the prior incident "as if it was okay" and she noted that he "struggles to take responsibility for his actions." (ECF 15-9 at 1.)

by a second nurse due to being non-compliant with his medication regimen. He complained at that visit about being served tomatoes and onions in his food and claimed to be allergic to these foods. (*Id.*) Clinical testing was ordered, but it came back negative for any allergy. (ECF 15-29 at 3.) On August 18, he had a nurse visit and reported having been on a water strike since August 16. (ECF 15-18 at 1.) He was seen on August 27 and reported having stomach pains, but it was reported by a correctional officer that he had not eaten any of his meals the day before. (ECF 15-19 at 1-3.) He was seen by a nurse two days later, and after the visit the nurse expressed her view to the doctor that Mr. Winters was "attempt[ing] to manipulate" the situation to obtain an onion and tomato-free diet order, even though testing had disproved that he had an allergy to these foods. (ECF 15-20 at 2.)

The Warden also provides Mr. Winters' grievance records. They reflect that since arriving at WCU in December 2022, he has filed 27 grievances about a variety of matters. (ECF 15-25.) A few of the grievances pertain to food, but none raise a concern about foreign objects in the food or dirty water. A grievance he filed in March 2023 complained that cafeteria workers "haven't been following the master menu." (ECF 15-26 at 1.) Around the same period, he complained that he was served peanut butter and jelly during Ramadan, which in his view "interfer[red] with me cleansing my body." (ECF 15-27 at 1.) The following month, he filed a grievance complaining that he had not been getting any fruit. (ECF 15-26 at 3.) In September 2023, he complained that he was being served foods containing tomatoes and onions; the response was that he had tested negative for any allergy to those foods. (ECF 15-29 at 1.)

Based on the documentation before me, Mr. Winters has not demonstrated a likelihood of success on his claim of deliberate indifference to his need for adequate food and water, or that he will suffer irreparable injury if he is not granted an immediate transfer out of WCU or other relief while this case is pending. He cannot "engineer an Eighth Amendment violation" by skipping meals or going on a "hunger strike" and then blaming prison staff for the consequences. *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005).

I have also considered that the Warden has submitted documentation suggesting that Mr. Winters did not exhaust his administrative remedies pertaining to the food and water claim as required by 42 U.S.C. § 1997e(a). I am not prejudging the issue, as exhaustion is an affirmative defense the Warden has the burden of pleading and proving, but if the Warden is ultimately successful in proving lack of exhaustion, the food and water claim will have to be dismissed outright without reaching the merits.[3] *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits[.]"). I also find it notable that Mr. Winters is aware of how to raise a concern about the conditions of his confinement, but he does not appear to have alerted prison staff to any problem involving contaminated food or dirty water during the many months he has been housed in WCU, even though he raised other concerns about this food. His motion for a preliminary injunction will be denied.

As a final matter, Mr. Winters filed a separate motion requesting waiver of all fees and costs in this case. (ECF 10.) I previously granted him leave to proceed in forma pauperis (ECF 4), but he appears to ask that he be excused from paying any amount of the filing fee. Because he is a prisoner, he is required by statute to pay the entire filing fee for this case even though he has been granted leave to proceed in forma pauperis. 28 U.S.C. § 1915(b)(1) ("[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee."). Fees are collected in accordance with the procedures set forth in 28 U.S.C. § 1915(b), and I do not have authority to modify the amount or timing of payments. *Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998). Mr. Winters was previously told as much earlier this year in one of his other civil rights cases. *See Winters v. Overholser,* No. 3:19-CV-430-DRL-MGG

---

[3] I note that the Warden has not yet answered the complaint; his answer is presently due January 16, 2024. (ECF 18.)

7

(N.D. Ind. closed Aug. 19, 2021), ECF 95 (order dated June 12, 2023). His request for waiver of the fee must be denied in this case as well.

He also appears to ask for a waiver of other "costs," but no costs have been incurred or assessed in this case.[4] To the extent he is referring to costs incurred by the Warden, it would be premature for me to resolve this issue as the case is still in the early stages. I note, however, that if the Warden ultimately prevails in this case, Mr. Winters is not automatically excused from paying his costs simply because he is a prisoner or because he was granted leave to proceed in forma pauperis. FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs. . . should be allowed to the prevailing party."); *McGill v. Faulkner*, 18 F.3d 456, 460 (7th Cir. 1994) ("[T]he rule that indigent prisoners, like anybody else, may be required to reimburse costs others have expended defending the prisoners' unsuccessful suits serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike."). In the event the Warden ultimately prevails in this case and files a bill of costs, Mr. Winters can assert his arguments against an award of costs at that time.

ACCORDINGLY, the court:

(1) DENIES the plaintiff's motion for a preliminary injunction (ECF 3); and

(2) DENIES the plaintiff's motion for waiver of fees and costs (ECF 10) as outlined.

SO ORDERED on January 2, 2024.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT

---

[4] Pursuant to 28 U.S.C. § 1915(d), service of process was handled by the clerk's office at no cost to Mr. Winters.