UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EMMANUEL A. WINTERS,

    Plaintiff,

        v.                               CAUSE NO. 3:23-CV-989-PPS-JEM

JACK HENDRIX, et al.,

    Defendants.

## OPINION AND ORDER

Emmanuel A. Winters, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 27.) This pleading supersedes his original complaint and controls the case from this point forward. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). Under 28 U.S.C. § 1915A, I must screen the amended complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Winters is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Winters has been in long-term segregation in the Westville Control Unit ("WCU") since December 2022. I screened his original complaint and allowed him to proceed on a claim against the Warden of Westville for prospective injunctive relief related to his need for clean drinking water, adequate food, and treatment for mental health issues. (ECF 5.) I dismissed a number of other claims and defendants. (*Id.*) Mr. Winters subsequently sought and was granted leave to file an amended complaint. (ECF 26, 27.) He now asserts claims against 15 defendants for monetary damages on a variety of issues.[1] (ECF 27.)

As with his original complaint, he again claims the food and water in the WCU is inadequate. He claims he was without drinking water for approximately two months when he first arrived in the WCU due to a broken faucet, and that subsequently the drinking water in his cell turned "brown," which caused him stomach pain when he drank it. (ECF 27 at 3-4.) The food is often cold, breakfast is "always the exact same seven (7) days a week," and he has been served food contaminated with foreign objects, such as hair, bugs, or even mice feces, because it is left out for hours before it is delivered to him. (*Id.* at 5.) He once accidentally ate mouse feces and became ill. *Id.* He claims he complained about problems with the food and water to Warden John

---

[1] Mr. Winters sought injunctive relief in his original complaint, and I ordered briefing on his request for a preliminary injunction. (ECF 5.) In an order issued on January 2, 2024, I denied his request for a preliminary injunction concluding that documentation provided by the Warden showed that he was being given clean drinking water, proper food, and adequate evaluation of his asserted mental health concerns. (ECF 21.) In the amended complaint, he only mentions wanting money damages and costs. (*See* ECF 27 at 12.)

Galipeau,[2] Deputy Warden Watts (first name unknown), and Deputy Warden Kenneth Gann, including prior to the incident wherein he allegedly ate mouse feces, but they allegedly did nothing to remedy the problems.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834.

The Eighth Amendment does not entitle an inmate to food that is hot or "even appetizing." *Williams v. Berge*, 102 F. App'x. 506, 507 (7th Cir. 2004); *see also Lunsford v. Bennett*, 17 F.3d 1574, 1578 (7th Cir. 1994). Nevertheless, "[t]he Constitution mandates that prison officials provide inmates with nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citation and internal quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 853-54 (7th Cir. 1999) (denial of food can amount to an Eighth Amendment violation). Inmates are also entitled to adequate drinking water. *Thomas v. Blackard*, 2 F.4th 716, 721 (7th Cir. 2021). On the subjective prong, the prisoner must allege that the

---

[2] As of February 2, 2024, the Warden at Westville is now Jason Smiley. *See Archer v. Galipeau, et al.*, 3:23-CV-529-PPS-MGG (N.D. Ind. filed Jun. 6, 2023), ECF 17. It is evident from the amended complaint Mr. Winters is pursuing a claim for damages against former Warden John Galipeau in his individual capacity based on events occurring before his departure.

defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Farnham*, 394 F.3d at 478.

Giving him the inferences to which he is entitled at this stage, he has satisfied the objective prong with respect to his food and water. He claims he was served food contaminated with foreign objects, including animal feces, and water that was dirty and brown. On the subjective prong, he claims Warden Galipeau, Deputy Warden Gann, and Deputy Warden Watts were personally aware of the problems with the food and water but did nothing to remedy them. *See Reed*, 178 F.3d at 855 (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). He has alleged enough to proceed on an Eighth Amendment claim against these defendants.

He further claims that he has been denied adequate treatment for psychological problems while at WCU. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing

4

medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.* Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

Mr. Winters claims to have suffered depression and other mental health problems during his detention in the WCU. Accepting his allegations as true, he has satisfied the first prong. On the second prong, he claims that therapists Michelle Borne and Ms. Halkhart (first name unknown) brushed off the symptoms he reported and refused to properly evaluate him. He further claims that the prison psychiatrist, Dr. Wala (first name unknown), refused to see him on a number of occasions when he reported feeling depressed or suicidal and would not prescribe him any medication. He has alleged enough to proceed further on an Eighth Amendment claim against these mental health providers.

He also alleges a *Monell* claim against Centurion Health of Indiana ("Centurion"), the private company that employs medical staff at the prison. A private company performing a public function can be held liable under *Monell*, but only if the unconstitutional acts of their employees "were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations

5

omitted). The purpose of this requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, the plaintiff must identify an official corporate policy that caused him injury. *Grieveson*, 538 F.3d at 771. Alternatively, a plaintiff pursuing an official custom theory "must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Mr. Winters' *Monell* claim is premised on an allegation that Centurion has an unlawful policy that "makes it difficult to receive adequate mental health treatment because of all the procedures plaintiff has to go through to see a psychiatrist to be prescribed mental health medication." (ECF 27 at 7.) He does not clearly allege how this policy caused his injury, and instead his amended complaint describes failings by Dr. Wala and the other staff members who evaluated him. Isolated incidents of misconduct by a few employees cannot support a *Monell* claim. *Howell*, 987 F.3d at 654; *Miranda*, 900 F.3d at 353-54. This corporate defendant will be dismissed.

He next claims that his access to legal materials is inadequate. Specifically, he claims there are delays in having documents notarized and in receiving requested legal materials and blank forms. Inmates have a right of access to the courts grounded in the First and Fourteenth Amendments, but this is not an "abstract, freestanding right." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, it hinges on whether there was prejudice to a non-frivolous legal claim. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Thus,

6

to state a claim, an inmate is required to "spell out" in at least minimal detail the connection between the defendant's conduct and the resulting prejudice to a potentially meritorious legal claim. *Id.* at 968. Mr. Winters does not identify any prejudice he suffered to a potentially meritorious legal claim as a result of the problems he identifies. Although he states that these issues "make[] it impossible to litigate," merely "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards.³ *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). He will not be permitted to proceed on a claim related to alleged inadequacies in his access to legal materials.

Next, he claims his due process rights were violated in connection with his detention in long-term segregation. Under the Fourteenth Amendment, due process protections are only required when a liberty interest is at stake. *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995). To trigger a liberty interest, an inmate must be subjected to an "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Id.* at 484. When an inmate is transferred to segregation, "his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty.*

---

³ Public records reflect that Mr. Winters has been an active litigant during his incarceration in the WCU. He initiated this case in November 2023 and has been regularly filing documents in the case since that date. He also has a case pending in the Southern District stemming from his transfer to WCU from another facility, and the docket reflects that he filed a variety of documents in that case between May 2023 and January 2024. *Winters v. Sevier, et al.*, 1:23-CV-744-TWP-MKK (S.D. Ind. filed May 1, 2023). He also litigated a habeas corpus petition challenging a state conviction during this period. *See Winters v. Warden*, 3:23-CV-893-HAB-SLC (N.D. Ind. closed Oct. 11, 2023).

7

*Jail*, 718 F.3d 689, 691 (7th Cir. 2013); *see also White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021) (inmates have a protected liberty interest in avoiding transfers within the prison that "substantially worsen the conditions of confinement"). There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019).

    Mr. Winters has been in long-term segregation for more than a year, and he claims the conditions there are quite harsh. Unlike inmates in general population, he is isolated in a cell by himself at all times; he leaves the cell a few hours a week to take a shower and exercise, but he does those things in isolation too. Unlike other prisoners, he also has to wear handcuffs and a "dog leash" around his neck whenever he leaves his cell. He often gets locked in the shower "for hours" waiting for an officer to come and retrieve him. The unit is extremely noisy because many inmates have psychological problems, causing them to yell throughout the day, and the area is constantly illuminated. He claims this combination of factors makes it impossible for him to sleep, which in turn has caused him to lose 25 pounds, feel depressed, and take two different medications to control his blood pressure, which he did not take before arriving at WCU. Giving him the inferences to which he is entitled, he has plausibly alleged that the harsh conditions in the WCU "deviated substantially from ordinary conditions of his confinement" and that these conditions personally caused him a significant hardship. *Lisle*, 933 F.3d at 721.

When a liberty interest is at stake in this context, inmates are entitled to "some informal, nonadversarial" procedures. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of the prison officials." *Id.* at 686. Review "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id*. In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Mr. Winters plausibly alleges that he has been denied minimal due process protections in connection with his detention in long-term segregation. Although it can be discerned that he has received periodic reviews of his placement, he alleges that this process is a "sham" and has essentially become a pretext for indefinite confinement, as the reviewers merely point to the reasons he was sent to WCU in the first place. He claims that there is no consideration of whether current factors warrant his continued detention in WCU and that he effectively has no means of being released to general population. He claims that Director of Classification Jack Hendrix, former Warden Galipeau, Deputy Warden Watts, Deputy Warden Gann, Unit Team Manager Tracy Cornett, Case Manager Thomas (first name unknown), and Case Workers Denis Gulleson, Kathleen Dougherty, Ms. Hines (first name unknown), and C. Carroll have all

9

played a role in the "sham" reviews of his placement. He will be permitted to proceed against these defendants on a claim for damages.[4]

He also appears to be trying to assert a *Monell* claim against IDOC Commissioner Christina Reagle in her official capacity related to agency policies about long-term segregation. This claim is unavailing, however, because *Monell* only applies to municipal actors, not state officials. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018). There is also no indication this high-ranking official had any personal involvement in these events, without which she cannot be held liable for damages. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). She will be dismissed as a defendant.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against former Warden John Galipeau, Deputy Warden Kenneth Gann, and Deputy Warden Watts (first name unknown) in their personal capacity for money damages for denying him adequate food and water in violation of the Eighth Amendment during his detention in the Westville Control Unit;

(2) GRANTS the plaintiff leave to proceed against Michelle Borne, Ms. Halkhart (first name unknown), and Dr. Wala (first name unknown) in their personal capacity for monetary damages for failing to provide him with adequate treatment for mental health

---

[4] I note that the usual remedy for a due process violation is nominal damages. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Saxner v. Benson*, 727 F.2d 669, 672 (7th Cir. 1984). He may also be able to obtain an award of punitive damages if he can prove the Defendants' conduct was egregious. *Calhoun*, 319 F.3d at 942.

problems in violation of the Eighth Amendment during his detention in the Westville Control Unit;

(3) GRANTS the plaintiff leave to proceed against Director of Classification Jack Hendrix, former Warden John Galipeau, Deputy Warden Kenneth Watts, Deputy Warden Gann (first name unknown), Unit Team Manager Tracy Cornett, Case Manager Thomas (first name unknown), and Case Workers Denis Gulleson, Kathleen Dougherty, Ms. Hines (first name unknown), and C. Carroll in their personal capacity for money damages for denying him due process protections in violation of the Fourteenth Amendment in connection with his long-term detention in the Westville Control Unit;

(4) DISMISSES all other claims;

(5) DISMISSES Centurion Health of Indiana and Christina Reagle as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) former Warden John Galipeau, Deputy Warden Kenneth Gann, Deputy Warden Watts (first name unknown), Director of Classification Jack Hendrix, Unit Team Manager Tracy Cornett, Case Manager Thomas (first name unknown), and Case Workers Denis Gulleson, Kathleen Dougherty, Ms. Hines (first name unknown), and C. Carroll at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 27) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

Michelle Borne, Ms. Halkhart (first name unknown), and Dr. Wala (first name unknown) at Centurion Health and to send them a copy of this order and the amended complaint (ECF 27) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(9) ORDERS former Warden John Galipeau, Deputy Warden Kenneth Gann, Deputy Warden Watts (first name unknown), Director of Classification Jack Hendrix, Unit Team Manager Tracy Cornett, Case Manager Thomas (first name unknown), Case Workers Denis Gulleson, Kathleen Dougherty, Ms. Hines (first name unknown), and C. Carroll, Michelle Borne, Ms. Halkhart (first name unknown), and Dr. Wala (first name unknown) to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: March 13, 2024.

    /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT