UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EMMANUEL A. WINTERS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-cv-989-PPS-AZ |
| JACK HENDRIX, et al., | |
| Defendants. | |

OPINION AND ORDER

Emmanuel A. Winters, a prisoner without a lawyer, is proceeding in this case on three claims. First, he has sued former Warden John Galipeau, Deputy Wardens Kenneth Gann and Kenneth Watts "in their personal capacity for money damages for denying him adequate food and water in violation of the Eighth Amendment during his detention in the Westville Control Unit[.]" [ECF 30 at 10.] Second, he is proceeding against Michelle Boren, Tori Halcarz, and Dr. Monica Wala (collectively, "the Medical Defendants") "in their personal capacity for monetary damages for failing to provide him with adequate treatment for mental health problems in violation of the Eighth Amendment . . ." [*Id.* at 10-11.] Third, he is proceeding against Jack Hendrix, Director of Classification, and a slew of others (who I will refer to as "the State Defendants"). This claim involves, broadly speaking, an alleged due process violation in how Winters has been classified at the Westville Control Unit. [*Id.* at 11.]

The Medical Defendants seek summary judgment on the grounds that Winters did not exhaust his available administrative remedies before filing this lawsuit. [ECF

65.[1]] The State Defendants filed a separate motion for partial summary judgment on the same grounds—failure to exhaust. [ECF 68.] Both summary judgment motions are now fully briefed and ripe for ruling. Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process,

---

[1] Defendant Tori Halcarz was initially dismissed because she could not be identified and served; however, the claim against her was reinstated a year into the case after Winters obtained information about her identity. [ECF 49, 86.] She rejoined the case after the motions for summary judgment were filed and seeks to join the motion filed by the Medical Defendants. [ECF 93.] The deadline for responding to her motion to join has expired, *see* N.D. Ind. L.R. 7-1(d)(3)(A), and no response was filed. I note additionally that Halcarz raises no new facts or new arguments pertaining to whether Winters exhausted, and instead argues simply that the arguments already raised by the Medical Defendants apply equally to her. This motion is granted.

2

exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). However, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). Courts take a pragmatic approach to the exhaustion requirement: judges need to consider whether the process was in fact available for the prisoner not whether it's a cold policy written somewhere "on paper." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). So, for example, when prison staff hinder an inmate's ability to use the administrative process, administrative remedies are not considered "available." *Id.* In other words, prison officials can't engage in shenanigans "to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

**Claims Involving the Medical Defendants**

Winters is proceeding against the Medical Defendants for failing to provide him with adequate treatment for mental health problems during his detention in the Westville Control Unit ("WCU"). [ECF 30 at 10-11.]

The medical defendants provided the court Winters' grievance records and an affidavit from the Grievance Specialist at Westville Control Facility ("WCF"), which show the following facts: To successfully exhaust a grievance, an inmate must complete three steps: (1) a formal grievance; (2) a Level I appeal to the warden; and (3) a Level II appeal to the Department Grievance Manager. [ECF 69-1 at 2, 9.] While incarcerated at WCF, Winters submitted two grievances related to his mental health care, but did not fully exhaust either grievance. [*Id.* at 5.]

First, on April 5, 2023, Winters submitted Grievance No. 154074, complaining he'd been denied adequate mental health treatment. [*Id.* at 5, 29.] On April 19, 2023, the

3

grievance office issued a response denying Grievance 154074. [*Id.* at 28.] On April 26, 2023, Winters submitted a Level I appeal to the warden, which was denied by the warden on May 15, 2023. [*Id.* at 26.] Winters never submitted a Level II appeal to the Department Grievance Manager, and therefore did not fully exhaust Grievance 154074. [*Id.* at 5, 26.] Second, on October 8, 2023, Winters submitted Grievance No. 161484, complaining he was being denied treatment for his sex addiction. [*Id.* at 5, 25.] On October 17, 2023, the grievance office issued a response denying Grievance 161484 on its merits. [*Id.* at 24.] On October 27, 2023, Winters initiated a Level I appeal, which was denied by the warden on November 8, 2023. [*Id.* at 22.] Winters never initiated a Level II appeal to the Department Grievance Manager, and therefore did not fully exhaust Grievance 161484. [*Id.* at 5, 22.]

The Medical Defendants argue summary judgment is warranted in their favor because Winters submitted two potentially relevant grievances but did not fully exhaust either grievance. [ECF 66.] In his response, Winters concedes he never fully exhausted any relevant grievance. [ECF 79.] I therefore accept that as undisputed. Instead, Winters argues his administrative remedies were "unavailable" because he was forced to submit grievance forms through his mail bag, which sometimes caused the forms to get lost.

Specifically, Winters attests he attempted to submit grievance forms directly to his Case Manager, but his Case Manager refused to accept the forms and instructed him to place the forms in his mail bag, despite knowing his mail bag would sometimes "come up missing." [ECF 79-1 at 2.] Winters sent an informal complaint to the Unit

4

Team Manager about his Case Manager's refusal to accept his grievance forms, and the Unit Team Manager likewise instructed him to place the grievance forms in his mail bag. [*Id.*] Winters attests that some of the grievance forms he submitted through his mail bag were never received by the grievance office, and he eventually wrote a complaint to the Ombudsman about the issue. [*Id.*]

      Here, Winters has not shown his administrative remedies were unavailable with regard to his claim against the Medical Defendants. Specifically, while Winters attests that he was required to submit grievance forms through his mail bag and his mail bag would sometimes "come up missing," he does not attest or provide any evidence that he in fact submitted any grievance forms related to his claim against the Medical Defendants that were lost in his mail bag. It's undisputed the grievance office received Grievance 154074 and Grievance 161484 from Winters, and that Winters received responses to both of these grievances and to his subsequent Level I appeals. [ECF 69-1 at 22, 25, 26, 29.] Winters does not attest or provide any evidence he ever submitted or attempted to submit Level II appeals for either of these grievances. Nor does Winters attest or provide any evidence he attempted to submit any other grievance forms relevant to his claim against the Medical Defendants. Therefore, even accepting as true that Winters' mail bag would sometimes "come up missing," this vague assertion is insufficient to show he was prevented from exhausting his claim against the Medical Defendants. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts" and "may not rely on vague, conclusory

5

allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted).

    Moreover, even assuming Winters did submit grievance forms relevant to his claim against the Medical Defendants which were lost in his mail bag, the Offender Grievance Process still provided available remedies he should have exhausted before filing this lawsuit. *See* ECF 69-1 at 15 (an inmate who submits a grievance and does not receive either a receipt or response from the Grievance Specialist within ten business days must "notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days"); *id.* at 19 (if an inmate submits a Level I appeal and receives no response from the warden within ten business days, he "may appeal to the Department Offender Grievance Manager."). Winters provides no evidence he complied with these procedures, but rather attests he wrote complaints to his Unit Team Manager and the Ombudsman about the lack of responses to his grievances, which did not satisfy the requirements of the Offender Grievance Process.

    Thus, it's undisputed Winters submitted two relevant grievances which he did not fully exhaust, and Winters provides no evidence he was prevented from fully exhausting these grievances. What's more, even assuming Winters tried to submit relevant grievance forms which were lost in his mail bag, it's undisputed he still had available remedies he could have pursued before filing this lawsuit. Therefore, the

Medical Defendants have met their burden to show Winters did not exhaust his available administrative remedies before filing this lawsuit. Summary judgment is warranted in their favor.

**Claims Involving the State Defendants**

Winters is proceeding against the State Defendants on an Eighth Amendment claim and a Fourteenth Amendment claim. Each claim will be addressed in turn.

*1. Eighth Amendment claim*

Recall that Winters is proceeding against Warden Galipeau and the two Deputy Wardens (Gann and Watts) for denying him adequate food and water during his detention in the WCU. [ECF 30 at 10-11.] Specifically, Winters alleged in his complaint that he was denied adequate drinking water in his cell for two months due to a broken faucet, the drinking water in his cell subsequently turned "brown" and caused him stomach pain, and he had been served food contaminated with foreign objects including hair, bugs, and animal feces. [*Id.* at 2-3.]

The State Defendants provide Winters' grievance records and an affidavit from WCF's Grievance Specialist, which show the following facts: During his incarceration in the WCU, Winters submitted a relevant grievance but did not fully exhaust that grievance. [ECF 68-1 at 13-14.] Specifically, on July 31, 2023, Winters submitted Grievance No. 154956, complaining his cell was infested with bugs that were ending up in his food. [*Id.* at 13; ECF 68-9 at 5.] On August 16, 2023, the grievance office issued a response denying Grievance 154956 on its merits. [ECF 68-1 at 13; ECF 68-9 at 4.] On November 3, 2023, Winters initiated a Level I appeal to the warden, which the warden

7

denied on November 14, 2023. [ECF 68-1 at 13; ECF 68-9 at 2.] But once again, Winters never submitted a Level II appeal to the Department Grievance Manager, and therefore did not fully exhaust Grievance 154956. [*Id.*] As for the claim about the quality of the drinking water, there's no evidence Winters ever submitted any grievance related to his drinking water at WCF.

Winters is a prolific griever. He has submitted (and fully exhausted) numerous grievances related to his food at WCF. But these grievances were unrelated to his Eighth Amendment claim against the State Defendants in this case. Specifically, Winters submitted three grievances complaining he had a food allergy to tomatoes and onions, one grievance complaining Aramark was straying from the master menu and not providing enough fruit, one grievance regarding his attempts to be placed on a kosher diet, and one grievance about his displeasure with the Ramadan menu. [ECF 68-1 at 10-14.] But while these grievances concerned the food Winters was served in the WCU, they did not put the prison on notice as to his claim he was being served food with foreign objects, bugs, and animal feces or that his water was tainted. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (exhaustion is designed to provide the prison with notice of the problem and give them an opportunity to fix it); *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (An inmate's grievance is sufficient to exhaust a claim only if it raises the same claim as the lawsuit and provides enough information to indicate that the defendant is the target). Therefore, Winters cannot rely on any of these grievances to show he exhausted his Eighth Amendment claim against the State Defendants.

8

In sum, the State Defendants have provided undisputed evidence Winters did not exhaust his available administrative remedies with regard to his Eighth Amendment claim, as it's undisputed he submitted a relevant grievance but did not fully exhaust that grievance by submitting a Level II appeal to the Department Grievance Manager. As discussed above, Winters' vague assertion that his mail bag would sometimes "come up missing" is insufficient to show he was prevented from exhausting his Eighth Amendment claim, as he does not argue or provide any evidence he ever submitted or attempted to submit a Level II appeal or any other grievance forms relevant to his Eighth Amendment claim that were lost in his mail bag. *See Gabrielle M.*, 315 F.3d at 822; *Sommerfield*, 863 F.3d at 649. Thus, the State Defendants have met their burden to show Winters did not exhaust his available administrative remedies for his Eighth Amendment claim before filing this lawsuit. Summary judgment is therefore warranted in favor of the State Defendants on this claim.

2. *Fourteenth Amendment claim*

Winters is proceeding against the State Defendants for denying him due process protections in violation of the Fourteenth Amendment in connection with his long-term detention in the WCU. [ECF 30 at 11.] The State Defendants argue Winters only exhausted this claim as to the time frame between June 1, 2023, through July 31, 2023, and did not exhaust his remedies as to any other time frame. [ECF 72 at 23-24.]

The State Defendants provide an affidavit from the Supervisor of Classification at WCF and Winters' classification documents, which show the following facts: During all relevant times, an "Adult Offender Classification" process was in place at WCF,

9

which allowed inmates to administratively appeal classification decisions such as placement and continued placement in restrictive housing. [ECF 68-11 at 5.] When Winters arrived at WCF, he maintained his department-wide restrictive housing ("DWRH-A") status that he'd received at his previous prison facility, and he was therefore placed in the WCU. [*Id.* at 3.] Throughout 2023, Winters received monthly reviews of his DWRH-A status, and it was determined each month that his status should be continued and he should remain in the WCU. [*Id.* at 6; ECF 68-14.]

Each monthly review of Winters' continued placement in the WCU was a separate classification decision and contained language explaining to Winters that he could submit a Classification Appeal (State Form 9260) if he wanted to appeal the decision. [ECF 68-11 at 6; ECF 68-14.] But of the 13 monthly reviews Winters received throughout his incarceration in the WCU, he only chose to appeal the review from June 1, 2023. [ECF 68-11 at 7; ECF 68-14 at 9; ECF 68-15.] Specifically, Winters filed a Classification Appeal on June 5, 2023, challenging the June 1 decision that he should remain in the WCU. [ECF 68-15 at 3.] Winters did not appeal any of the classification reviews prior to June 1, and did not appeal any of the classification reviews after June 1. [ECF 68-11 at 7.] Because Winters does not dispute these facts, I accept them as undisputed.

The State Defendants argue that, because Winters only appealed the June 1 classification review, he only exhausted his administrative remedies with regard to the review period between June 1, 2023, and July 31, 2023, and did not exhaust any claims

outside of that time frame. [ECF 72 at 23-24.] In his response, Winters does not respond to this argument.

In *Jenkins v. Brown*, No. 2:23-cv-00075-JPH-MG, 2023 WL 2018565 (S.D. Ind. Feb. 14, 2023), the district court for the Southern District of Indiana addressed this issue. There, the inmate was kept in solitary confinement for an approximately eleven-year period between November 2007 and March 2019 and received regular classification reviews, but did not file a Classification Appeal until February 14, 2019. *Id.* at *5. The court determined the inmate's February 14 Classification Appeal exhausted all claims related to his confinement after that date, as "prisoners need not file multiple, successive grievances raising the same issue." *Id.* (citing *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)). However, his February 14 Classification Appeal did not exhaust his claims from before that date, as there is no authority holding "that the filing of a grievance applies retroactively to previously expired claims that were not timely grieved." *Id.* The court concluded that:

> Mr. Jenkins had an appeal procedure available to him but did not use it until February 14, 2019. At best, therefore, Mr. Jenkins has properly exhausted claims regarding his confinement in administrative segregation from January 9, 2019—when he received the first of two decisions that he challenged in his classification appeal—until his release from administrative segregation three months later.

*Id.*

Here, based on the reasoning in *Jenkins*, which I find to be sound, Winters' June 5 Classification Appeal exhausts his confinement claims against the State Defendants beginning on June 1, 2023 (the date of the classification review he

11

challenged in his June 5 Classification Appeal), but does not exhaust his confinement claims from before that date. There's no authority holding that Winters' June 5 Classification Appeal can retroactively exhaust his confinement claims prior to June 1, as it's undisputed he did not appeal any classification reviews prior to that date and he does not argue or provide any evidence the appeals process was unavailable to him at any point. Thus, the undisputed facts show Winters exhausted his available remedies regarding his confinement in the WCU beginning on June 1, 2023, but did not exhaust his remedies regarding his confinement before that date.

For these reasons, the court:

(1) GRANTS Tori Halcarz's motion to join the Medical Defendants' summary judgment motion (ECF 93);

(2) GRANTS the Medical Defendants' motion for summary judgment (ECF 65);

(3) DISMISSES the Medical Defendants (Michelle Boren, Tori Halcarz, and Dr. Monica Wala) from this action;

(4) GRANTS the State Defendants' motion for partial summary judgment (ECF 68) with regard to: (i) Winters' Eighth Amendment claim; and (ii) Winters' Fourteenth Amendment claim prior to June 1, 2023;

(5) DENIES the State Defendants' motion for partial summary judgment (ECF 68) with regard to Winters' Fourteenth Amendment claim beginning on June 1, 2023; and

(6) REMINDS the parties this case is now proceeding only on Emmanuel Winters' remaining claim against Director of Classification Jack Hendrix, former Warden John Galipeau, Deputy Warden Kenneth Watts, Deputy Warden Kenneth Gann, Unit Team Manager Tracy Cornett, Case Manager Cheryl Thomas, Case Workers Dennis Gulleson, Kathleen Dougherty, Kimberly Hines, and Charles Carroll in their personal capacity for money damages for denying him due process protections in violation of the Fourteenth Amendment in connection with his long-term detention in the Westville Control Unit beginning on June 1, 2023.

SO ORDERED on February 24, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT